RECEIVED
IN LAKE CHARLES, LA

SEP 29 2011

TONY R. MOORE, CLERK
WESTERN DISTRICT OF LOUISIANA

# UNITED STATES DISTRICT COURT

## WESTERN DISTRICT OF LOUISIANA

### LAKE CHARLES DIVISION

| | | |
|---|---|---|
| BLACK LAKE LAND & OIL., L.L.C. | : | **DOCKET NO. 2:09 CV 02227** |
| VS. | : | **JUDGE MINALDI** |
| AUDUBON INSURANCE COMPANY AND LA CITIZENS FAIR PLAN | : | **MAGISTRATE JUDGE KAY** |

### MEMORANDUM RULING

Presently before the court is a Motion to Dismiss (Rec. Doc. 6) filed by the defendants, Rimkus Consulting Group, Inc. Of Louisiana, and Craig D. Rogers. This motion is opposed by the plaintiff.

### Rule 12(b)(6) Standard

A motion filed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure challenges the sufficiency of a plaintiff's allegations. Fed. R. Civ. P. 12(b)(6). When ruling on a 12(b)(6) motion, the court accepts the plaintiff's factual allegations as true, and construes all reasonable inferences in a light most favorable to the plaintiff or nonmoving party. *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1965 (2007). To avoid dismissal under a Rule 12(b)(6) motion, plaintiffs must plead enough facts to "state a claim to relief that is plausible on its face." *Id*. at 1974. "Factual allegations must be enough to raise a right to relief above the speculative level...on the assumption that all the allegations in the complaint are true (even if doubtful in fact)..." *Id*. at 1965. Accordingly, a plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id*.

The Supreme Court recently expounded upon the *Twombly* standard, explaining that "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, ---U.S. ----, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (quoting *Twombly*, 550 U.S. at 570, 127 S.Ct. 1955). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* It follows that "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]'-'that the pleader is entitled to relief.'" *Id.* at 1950 (quoting Fed.R.Civ.P. 8(a)(2)); *Harold H. Huggins Realty, Inc. v. FNC, Inc.*, 634 F.3d 787 (5th Cir. 2011); *Gonzalez v. Kay*, 577 F.3d 600, 603 (5th Cir. 2009).

When deciding a motion to dismiss, a district court "must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322, 127 S.Ct. 2499, 168 L.Ed.2d 179 (2007) (citations omitted). "A judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed.R.Evid. 201(b).

When reviewing a motion to dismiss, a district court may not consider matters beyond the complaint. *Kostrzewa v. City of Troy*, 247 F.3d 633, 643 (6th Cir.2001) (citing 2 James Wm. Moore et al., Moore's Federal Practice § 12.34[2] (3d ed.2000)). If the district court considers evidence outside the complaint, it effectively converts the motion to dismiss to a motion for summary

judgment. *Id.* (citing Fed.R.Civ.P. 12(b)(6)); *see also Carter v. Stanton,* 405 U.S. 669, 671, 92 S.Ct. 1232, 31 L.Ed.2d 569 (1972). The district court must then give the parties a " 'reasonable opportunity to present all material made pertinent to such a motion by Rule 56.' " *Id.* (citing Fed.R.Civ.P. 12(b)(6)). Other circuits have held, however, that the district court may look to certain documents outside the complaint and such action does not result in a conversion of the motion to dismiss to a motion for summary judgment. The Third Circuit, in *Southern Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Group Ltd.,* 181 F.3d 410, 426 (3d Cir.1999), wrote, "To resolve a 12(b)(6) motion, a court may properly look at public records, including judicial proceedings, in addition to the allegations in the complaint." (citing numerous Third Circuit opinions for this proposition). "Specifically, on a motion to dismiss, we may take judicial notice of another court's opinion not for the truth of the facts recited therein, but for the existence of the opinion, which is not subject to reasonable dispute over its authenticity." *Id; Winget v. JP Morgan Chase Bank, N.A.,* 537 F.3d 565, 576 (6th Cir. 2008).[1]

Procedural History

The plaintiff, Black Lake Land & Oil Co., L.L.C. ("Black Lake") filed this lawsuit against Rimkus Consulting Group, Inc. of Louisiana ("Rimkus") and Rimkus employee, Craig D. Rogers ("Rogers"), on November 19, 2009, alleging that Rimkus and Rogers are liable to the plaintiff for rental and interest income allegedly lost by Plaintiff following Hurricane Rita. Black Lake contends that a May 3, 2006 forensic engineering report prepared by Rogers for Black Lake's wind insurer,

---

[1] Both parties have attached extrinsic documents to their memoranda. If the court were to consider these documents, this motion would be converted to a Rule 56 motion for summary judgment. The court will not, however, consider these documents to determine the sufficiency of the pleading.

Louisiana Citizens Fair Plan Insurance ("Louisiana Citizens"), "intentionally and/or fraudulently and/or negligently . . . indicate[d] that flood damages were the primary cause of the Plaintiff's damages so that Rimkus' client, Louisiana Citizens, would not be responsible for Plaintiff's damages" thereby resulting in Louisiana Citizen's delay in payment of Plaintiff's claims for over a year.

Black Lake previously brought a suit against its insurer, Louisiana Citizens, for damages (including lost rental and interest income) and penalties allegedly resulting from the failure to timely adjust and pay the plaintiff's Hurricane Rita insurance claim.  Black Lake tried those claims to conclusion, obtained a favorable trial ruling, and then settled the claim.

Law

In the motion to dismiss, Rimkus and Rogers argue that Black Lake has not stated a viable claim for delay damages; has no cause of action for negligence against Rimkus or Rogers; and has not, and cannot, stated a fraud claim against Rimkus and Rogers.  In the opposition to the motion (Rec. Doc. 15), Black Lake concedes that it has not made contractual claims against Rimkus and Rogers;  has not made claims against Rimkus for breaches of R.S. 22:1892 and 22:1973;  and has no cause of action in negligence against the defendants. (Rec. Doc. 15, p. 7).  Black Lake contends that it does, however, have a claim against Rimkus and Rogers for fraud, intentional tort, or conversion. The pivotal issue then, becomes whether or not Black Lake sufficiently pleaded a cause of action for fraud or conversion.

Fraud

"Louisiana jurisprudence indicates that the following are the elements of the tort of fraud:

1) a misrepresentation of material fact; 2) made with the intent to deceive; 3) reasonable or justifiable reliance by the plaintiff; and 4) resulting injury. The intent to deceive is a specific intent." *Wooley v. Lucksinger,* 14 So.3d 311, 378–79 (La.App. 1st Cir.2008); *see also* La. Civ.Code art. 1953; *Guidry v. U.S. Tobacco Co.,* 188 F.3d 619, 627 (5th Cir.1999). "Fraud ... may be established by circumstantial evidence." La. Civ.Code art. 1957; *accord Lafayette Ins. Co. v. Pennington,* 966 So.2d 136, 138 (La.App. 2d Cir.2007); *Schaumburg v. State Farm Mut. Auto. Ins. Co.,* 421 Fed.App'x. 434, 442, (5th Cir. 2011).

The pertinent allegations contained in the First Supplemental and Amending Petition are contained in ¶¶ 8 through 10:

### 8

Because Mr. El-Chaar's conclusions were unfavorable to Rimkus' client, Louisiana Citizens, Rimkus charged one of its direct employees, defendant Craig D. Rogers, with the task of altering the conclusions in Mr. El Chaar's report to result in a favorable coverage defense for Louisiana Citizens. In that regard, on May 3, 2006, Rogers drafted a report which concluded, in direct contradiction to Mr. El- Chaar's report, that "the storm surge of Hurricane Rita" was the primary cause of the damages Rimkus was asked to analyze. This was the only report sent over or provided to Louisiana Citizens' claims examiner, which report directly resulted in Plaintiff's claims for the damages at issue being denied by Louisiana Citizens.

### 9

The report prepared by Rogers was intentionally and/or fraudulently and/or negligently prepared to indicate that flood damages were the primary cause of the Plaintiff's damages so that Rimkus' client, Louisiana Citizens, would not be responsible for Plaintiff's damages, when Rogers and Rimkus knew that wind was in fact the primary cause of those damages. In that regard, defendant Rogers: (1) did not even look at the file involving Plaintiff's claim until the day before he issued his report; (2) did not speak to Mr. El-Chaar, who was the only person to ever personally inspect or visit Plaintiff's property before (or after) Rogers prepared his report; (3) never inspected Plaintiff's property; (4) never visited Plaintiff's property; (5) never measured Plaintiff's property; (6) never photographed Plaintiff's property; (7) never verified the elevation of Plaintiff's property; (8) never had any other dealings or

observations whatsoever concerning Plaintiff's property before (or after) issuing his report. The only substantive work performed by Rogers for Rimkus with respect to the Plaintiff's property was his changing of the conclusions of Mr. El-Chaar's report to result in favorable coverage finding for Rimkus' client, Lousiana Citizens. Upon information and belief, these changes in Mr. El-Chaar's report were completely without Mr. El-Chaar's knowledge, consent or authorization.

.

10

As a direct result of defendant Rogers' intentional and/or fraudulent and/or negligent conduct with respect to the wrongful report he issued to Louisiana Citizens, Rogers is liable for the damages resulting to Plaintiff caused by the issuance of said report. Specifically, as a direct result of and in direct reliance upon Rogers' wrongful report, Louisiana Citizens denied coverage and delayed payment of Plaintiff's claims for well over a year. This delay in the payment of Plaintiff's claims caused by Roger's report directly resulted in huge losses of rental revenues and interest income by Plaintiff. Moreover, because Roger's report was prepared in the course and scope of his employment with Rimkus, Rimkus is additionally liable to the Plaintiff under the doctrine of *respondeat superior.*

The petition alleges that Rogers prepared his report for Rimkus and, ultimately, for Louisiana Citizens. There is no allegation that the report was prepared for Black Lake, or even shown to Black Lake. Because the report was not prepared for Black Lake, there could have been no misrepresentation or intent to deceive. There is no allegation that Black Lake relied upon this report, only that Louisiana Citizen's relied on the report to the detriment of Black Lake. The resulting injury was Louisiana Citizen's failure to pay based upon the report. Even accepting the plaintiff's factual allegations as true, this First Supplemental and Amending Petition fails to state a claim upon which relief may be granted based on fraud.

Conversion

The plaintiff argues that Rogers and Rimkus are liable for the intentional tort of conversion. Conversion is the commission of a wrongful act of dominion over the property of another in denial

of or in a manner inconsistent with the owner's rights. *Junior Money Bags, Ltd. v. Segal,* 970 F.2d 1, 11 ( 5th Cir. 1992);  *Security Home Mort. Corp. v. Bogues,* 519 So.2d 307 (La.App.2d Cir.1988).

Conversion is an act in derogation of the plaintiff's possessory rights or any wrongful exercise or assumption of authority over another's goods, depriving him of permanent or indefinite possession. *Chrysler Credit Corp. v. Whitney National Bank,* 51 F.3d 553 (5th Cir.1995). It is the commission of a wrongful act of dominion over the property of another in denial of or inconsistent with the owner's rights. *Junior Money Bags, Ltd. v. Segal,* 970 F.2d 1 (5th Cir.1992). In order to prevail on a claim of conversion under Louisiana law, the plaintiff must prove that (1) he owned or had the right to possess; (2) the defendant's use was inconsistent with the plaintiff's right of ownership; and (3) the defendant's use constituted a wrongful taking. *Chrysler Credit Corp. v. Whitney National Bank,* 798 F.Supp. 1234 (E.D.La.1992); *Bernofsky v. Tulane University Medical School,* 962 F.Supp. 895, 906 (E.D.La.,1997).

Black Lake alleges that the defendants' actions resulted in a delay in receiving insurance proceeds from Louisiana Citizen.  Black Lake never alleges that Rogers of Rimkus ever had possession of or used the proceeds that Black Lake claimed through insurance coverage.  Again, accepting  the plaintiff's factual allegations as true, this First Supplemental and Amending Petition fails to state a claim upon which relief may be granted based on conversion.

Damages

The defendants argue that whether alleging fraud or conversion, the plaintiff cannot prove damages.  Black Lake alleges that it suffered "lost rental and interest income." *See* First Supplemental and Amending Petition ¶ 11. These are the same damages that Black Lake sought to

recover, and did in fact recover, in the original suit against Louisiana Citizens.

Black lake alleges that, as a direct result of and in direct reliance upon Rogers' wrongful report, Louisiana Citizens denied coverage and delayed payment of Plaintiff's claims for well over a year. This delay in the payment of Plaintiff's claims caused by Roger's report directly resulted in huge losses of rental revenues and interest income by Plaintiff.

In the Response (Rec. Doc. 15) to the defendants' motion, Black Lake argues that it is solidarily liable with Louisiana Citizens (p. 8). The defendants argue that, under Louisiana law, solidary liability occurs when each obligor is liable for the whole performance of the obligation. La. Civ. Code Art. 1794. If Rimkus, Rogers and Louisiana Citizens are solidarily liable, then Louisiana Citizens has performed this solidary obligation in the state court suit. Black Lake has been made whole. Louisiana Citizen extinguished the obligation. Therefore, there are no damages alleged by Black Lake sufficient to survive a 12(b)(6) motion to dismiss.

Judicial Estoppel

The defendants further argue that, to distance itself from its prior settlement with Louisiana Citizens, Black Lake argues that *res judicata* principles cannot apply based upon the plaintiff's failure to obtain a final judgment. The plaintiff is correct in this reasoning as, technically, a final judgment was never signed in the state court case. The defendants counter this argument with the assertion that the doctrine of judicial estoppel applies instead.

"The doctrine of judicial estoppel prevents a party from asserting a claim in a legal proceeding that is inconsistent with a claim taken by that party in a previous proceeding." *New Hampshire v. Maine*, 532 U.S. 742, 749, 121 S.Ct. 1808, 149 L.Ed.2d 968 (2001) (quoting 18

-8-

*Moore's Federal Practice* § 134.30, at 134–62 (3d ed.2000)) (internal quotation marks omitted). "[J]udicial estoppel 'is an equitable doctrine invoked by a court at its discretion.' " *Id.* at 750, 121 S.Ct. 1808 (quoting *Russell v. Rolfs,* 893 F.2d 1033, 1037 (9th Cir.1990)). "[S]everal factors typically inform the decision whether to apply the doctrine in a particular case: First, a party's later position must be 'clearly inconsistent' with its earlier position." *Id.* (quoting *United States v. Hook,* 195 F.3d 299, 306 (7th Cir.1999)). "Second, courts regularly inquire whether the party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create 'the perception that either the first or the second court was misled.' " *Id.* (quoting *Edwards v. Aetna Life Ins. Co.,* 690 F.2d 595, 599 (6th Cir.1982)). "A third consideration is whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped." *Id.*; *DK Joint Venture 1 v. Weyand,* 2011 WL 3342370, 7 (5th Cir. 2011).

The defendants contend that the plaintiff's current assertion that Rimkus and Rogers are liable for delay damages is clearly inconsistent with its prior position in state court[2] that Louisiana Citizen was solely liable for delay damages. The plaintiff never argued in state court that Louisiana Citizen's fault should be reduced because of comparative fault on the part of Rimkus or Rogers. Now, Black Lake is seeking the same damages from Rimkus and Rogers.

In *Bolensny v. Cannonball Moving, Inc.,* 99-2096 (La. App. 4 Cir. 2/9/00), 752 So.2d 979, *writ denied,* 2000-0741 (La. 4/28/00), 760 So.2d 1179, cited by the defendants, Bolensny took a

---

[2] This court will take judicial notice of the state court proceeding. The state court record is a matter of public record directly relevant to the issue at hand. *Norris v. Hearst Trust,* 500 F.3d 454, 461 n. 9 (5th Cir.2007) ("it is clearly proper in deciding a 12(b)(6) motion to take judicial notice of matters of public record."). *Funk v. Stryker Corp.,* 631 F.3d 777, 783 (5th Cir. 2011)

judgment against Cannonball, based on the assertion that his injuries were the sole result of Cannonball's negligence.  After the plaintiff failed to collect against Cannonball, he amended his suit to allege that a different defendant, Pratt-Stanton Manor, was liable for his injuries.  The court rejected the plaintiff's claim holding:

> Plaintiff was content to collect his entire claim from Cannonball without giving Cannonball any reduction for the alleged comparative negligence of Pratt-Stanton Manor and would have done so had it not been for the apparent insolvency of Cannonball. Plaintiff having sought to avail himself of all the advantages of getting a default judgment based on the sole negligence of Cannonball and its employees, should have to live with its disadvantages as well. 752 So.2d 979, 981.

In *Bolensny,* however, the court also noted that the plaintiff had made no allegations of newly discovered evidence or any other equitable reason why he was unable to urge the negligence of Pratt-Stanton Manor in his original petition or in the default proceedings. 752 So.2d 979, 980.  Black Lake asserts that they did not know of the allegedly wrongful actions of the defendants until much later.[3]

Additionally, at the time of the new allegations in *Bolensny*, the prior judgment had long since become final, so the court reasoned that there was a conclusive presumption that it was obtained based upon evidence sufficient to establish a prima facie case, which would include evidence that the actions and negligence of Cannonball and its employees were the sole cause of plaintiff's injuries as alleged in plaintiff's petition. LSA-C.C.P. art. 1702A and B(2); *Bolensny* at 981. In the case at bar, a final judgment was never issued.

The defendants argue that fairness dictates that Black Lake, the party that was content to seek damages against Louisiana Citizens, should not be allowed to assert these claims against Rimkus and

---

[3] The record of the trial court contradicts this assertion.

Rogers.

Black Lake argues that judicial estoppel is not applicable as a final judgment was never issued. Moreover, Louisiana law specifically contemplates that a suit may be amended to join additional tortfeasors if there is a delay in discovering the wrongful conduct of these additional tortfeasors. La. C.C. art. 2432(C) provides that the "interruption of prescription against one joint tortfeasor is effective against all joint tortfeasors." Black Lake asserts that article 2432(c), as well as the principles of *res judicata*, specifically contemplate that a party is "perfectly within its rights" to join additional tortfeasors in a pending suit in which final judgment has not been rendered.

The plaintiff's argument blends *judicial estoppel* and *res judicata* principles. A final judgment is not required to apply judicial estoppel and the facts of this case are very troubling. There was a state court proceeding by Black Lake against Louisiana Citizens. On September 14 through 16, 2009, the plaintiff tried its case against Louisiana Citizens in the Fourteenth Judicial District Court before Judge Ron Ware. During the bench trial, Black Lake argued that Louisiana Citizens tried to use the May 3, 2006, report issued by Rogers on behalf on Rimkus to deny coverage. Plaintiff's Post-trial Memo, Doc. 6-1, exhibit B. At trial, Plaintiff argued that Louisiana Citizens' delay in paying its claim caused Plaintiff to lose rental and interest income. In the plaintiff's Post-Trial Memorandum, the plaintiff specifically addressed Mr. Rogers, his May 3, 2006 report and any alleged coverage denials or payment delays related thereto. *Id.* at pp. 5-10. In that Post-Trial Memorandum, Black Lake argued that "La. Citizens offered Craig Rogers as an expert to provide affirmative evidence to try to show that La. Citizens was not in bad-faith for failing to pay the $92,922.69 when it was requested by Mr. Marr [the claims examiner overseeing Plaintiff's insurance claim]." *Id.* at p. 5. Black Lake argued that claims examiner Marr acknowledged that he did not have

-11-

satisfactory proof of the $92,922.69 loss until "September 20, 2006, and that payment was not made for 67 days thereafter on November 26, 2006." *Id.* at p. 6.  Black Lake further argued that Louisiana Citizens' failure to timely adjust this insurance claim rendered Louisiana Citizens liable for delay damages under La. R.S. 22:1973. *Id.* The plaintiff enumerated its delay damages as including lost income during three hunting seasons (2006, 2007 and 2008) valued at $839,304.00, loss of potential lodging rental to LNG workers, valued at $329,085.00, and loss of favorable financing terms, which it valued at $337,962.00. *Id.* at p. 9.

Judge Ware took the case under advisement, ultimately issuing an oral ruling in open court on October 22, 2009 . ( Doc. 6, Ex. C). In his ruling, Judge Ware found that Louisiana Citizens was arbitrary and capricious in failing to timely adjust the plaintiff's claims and assessed damages under La. R.S. 22:1973. *Id.* at pp. 3-4. Judge Ware awarded the plaintiff two seasons (2006 and 2007) of lost hunting rental income, which the court determined was $559,536.00, and also awarded $337,962.00 for the loss of favorable financing terms. *Id.* at pp. 4-7 and p. 11. Judge Ware rejected Black Lake's claim for lost lodging income from LNG workers, finding the proof thereof too speculative. *Id.* at p. 5. Judge Ware also awarded Black Lake  penalties equivalent to 150% of its damage award, resulting in a total damage and penalty award of $2,281,822.50. *Id.* at p. 12. Finally, Judge Ware awarded attorney fees equivalent to one-third of the total damage and penalty award, bringing the entire trial award in favor of the plaintiff to $3,042,430.00. *Id.* at p. 13.

At the conclusion of Judge Ware's ruling, the court and counsel discussed Black Lake's desire to expedite the preparation of a judgment implementing Judge Ware's ruling. *Id.* at pp. 14-16. Plaintiff's counsel agreed to submit a proposed judgment to counsel for Louisiana Citizens the following day (Friday, October 23, 2009) and counsel for Louisiana Citizens agreed to respond

thereto by 2:00 p.m. on Monday, October 26, 2009). *Id.* Despite the extended discussion and ultimate agreement to prepare an expedited judgment, the state court record reflects that no such judgment was ever prepared. Black Lake thereafter mediated its claims against Louisiana Citizens, agreeing to a monetary settlement.

What is disconcerting to this court is that, after agreeing to settle but before dismissing Louisiana Citizens, the plaintiff filed the First Supplemental and Amended Petition for Damages now before this court. It is clear from the facts of the case before Judge Ware that Black Lake knew of the involvement of Rimkus and Rogers and Louisiana Citizens' alleged reliance on the reports while the initial suit was pending before Judge Ware and, for whatever reason, did not choose to amend the petition prior to the trial. The failure of the state court to issue a final judgment rests primarily upon Black Lake because no proposed judgment was submitted. Then, Black Lake took advantage of the absence of a final judgment to attempt to add two new parties to the suit wherein the initial claim has been compromised.

This court finds that judicial estoppel is applicable to the facts of this case. Black Lake's position is clearly inconsistent with the position it took in the state court proceeding. Knowing about the involvement of Rimkus and Rogers, Black Lake chose to pursue damages against only Louisiana Citizens in that trial. Black Lake is now seeking essentially the same damages from Rimkus and Rogers. The state court accepted Black Lake's position by rendering a verdict in its favor. To permit this action against Rimkus and Rogers at this point would create the perception that one or both of the courts had been misled. Additionally, to permit this action against Rimkus and Rogers would give Black Lake an unfair advantage.

Conclusion

For the reasons set forth herein, the defendants' Rule 12(b)(6) motion to dismiss will be granted.

Lake Charles, Louisiana, this ⟨2⟩ day of September, 2011.

PATRICIA MINALDI
UNITED STATES DISTRICT JUDGE